Receipt Number

555434

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

TECUMSEH PRODUCTS COMPANY,

        Plaintiff,

v.

TODD HERRICK, KENT HERRICK,
TONI HERRICK, MICHAEL INDENBAUM, and
THE HERRICK FOUNDATION,

        Defendants.

Case: 2:07-cv-11144
Assigned To: Steeh, George Caram
Referral Judge: Majzoub, Mona K
Filed: 03-15-2007 At 04:52 PM
CMP TECUMSEH CO V. HERRICK ET AL (D A)

---

MILLER, CANFIELD, PADDOCK and STONE, PLC
Carl H. von Ende (P21867)
Todd A. Holleman (P57699)
Attorneys for Plaintiff Tecumsch Products Company
150 W. Jefferson, Ste. 2500
Detroit, Michigan 48226
(313) 496-7668

---

## PLAINTIFF TECUMSEH PRODUCTS COMPANY'S COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff Tecumseh Products Company ("Tecumseh" or "the Company") for its complaint against defendants Todd Herrick, the Herrick Foundation, Kent Herrick, Toni Herrick and Michael Indenbaum states:

### INTRODUCTION

1. For much of the last century, Tecumseh enjoyed a stellar reputation and strong financial results as a publicly held global manufacturer of hermetic compressors for air conditioning and refrigeration products, gasoline engines and powertrain components for lawn and garden applications, and small electric motors. Tecumseh's products are sold in over 120 countries around the world.

2. In recent years, however, the Company's financial performance began to suffer.

3.  With the situation deteriorating, the Board of Directors – with then CEO Todd Herrick's support – brought in one of the world's leading turnaround firms, AlixPartners, to work on a restructuring plan for the Company's Engine Group.

4.  AlixPartners' work (led by experienced turnaround professional, Jim Bonsall) led to substantial improvements in the operational performance of the Engine Group and cost savings in the tens of millions of dollars.

5.  With an urgent need to effectuate a turnaround throughout Tecumseh, the Board of Directors (the "Board") turned to Mr. Bonsall as the interim President and COO to oversee urgently needed changes throughout the Company.

6.  Mr. Bonsall's position was only interim because weeks before, one of Tecumseh's key lenders had conditioned its financing upon finding a replacement for Mr. Herrick as CEO.

7.  By January 2007, the Company's financial condition had further deteriorated. After Mr. Herrick made clear that he was unwilling to work cooperatively with the President and COO on necessary changes in operations, the Director Defendants, who constitute a majority of the Tecumseh Board, voted to remove Mr. Herrick as CEO. In doing so, the Board agreed that Mr. Herrick could remain as non-executive Chairman of the Board.

8.  Shortly thereafter, Mr. Herrick tendered a slate of three nominees for seats on the Board. Mr. Herrick provided virtually no information on two of his nominees, and nominated himself for a third slot.

9.  Mr. Herrick's pronouncement, with no additional information, left the remaining members of the Board with several options, as they met on February 28, 2007.

10. One option that was not available, however, was to slate Mr. Herrick's two outside nominees, Mr. Gunn and Mr. Lebowski. They had never been introduced to the Board and little

2

information was provided as to their qualifications. Indeed, facts have recently come to light that make clear that neither would be qualified to serve as directors of Tecumseh.

11. One option available to the Board was to slate its nominees and have them stand for election with Mr. Herrick's nominees. With the current Board size of five (the minimum allowed under the Company's By-Laws), such a step would likely have resulted in Mr. Herrick controlling the Board due to the stock ownership he controls. But with the Company's precarious financial position, which had been brought on by Mr. Herrick's demonstrated lack of stewardship, the Board justifiably concluded that effectively ceding control of the Board to Mr. Herrick would breach their fiduciary duties to all of Tecumseh's stakeholders. Accordingly, acting at all times in full compliance with the applicable regulations and By-Laws, the Board voted to amend the Company's by-laws and expand the number of Board positions from five to seven, while at the same time nominating Messrs. Banks, Koch, Risley and Sheehan for the Board.

12. In connection with action, the Board voted to remove Mr. Herrick as Chairman of the Board (he remained and to date is still a Board member) and amended the Company's by-laws related to the calling of a special meeting of the shareholders by the directors so that only the Chairman of the Board or the President of the Company could call a special meeting of the shareholders.

13. The Board's action was entirely consistent with the only information about Mr. Herrick's intentions then known to the Board – namely his Schedule 13D filed with the SEC, in which he said his plans for the Company did not include replacing any of the current directors. Thus, the Board preserved the status quo of corporate governance at Tecumseh with no intrusion on Mr. Herrick's announced plans.

14. Only by acting in this fashion could the Board have fulfilled their fiduciary duties to not just the owners of Tecumseh common stock, but to all stakeholders in Tecumseh.

15. At no point did the Board take any action contrary to the letter or the sprit of the Company's governing documents or the applicable law.

16. On March 6, 2007, Todd Herrick and the Herrick Foundation filed a lawsuit against the Company and three members of its Board of Directors and Messrs Koch, Banks and Risley, in the Circuit Court for the County of Lenawee, State of Michigan, Case No. 07-2525-CZ ("the State Court Case"), and made allegations that the three directors (and the Company) had interfered with shareholders' voting rights and breached fiduciary duties that they had to the shareholders and the Company.

17. The allegations made by Todd Herrick and the Herrick Foundation in the State Court Case are generally false.

18. The State Court Case is subject to a pending motion to dismiss because the complaint asserts claims that, if they had any merit, would belong to the Company and not plaintiffs, and plaintiffs have failed to comply with the statutory requirements for bringing a derivative action. Their failure compels the state court to dismiss their complaint.

19. Regardless, Todd Herrick and the Herrick Foundation cannot assert any claims on any purported loss of voting rights because their actions have caused virtually all of their voting rights to be suspended, and this Court should enjoin the Defendants from exercising those rights.

4

## PARTIES

20. Tecumseh Products Company is a Michigan corporation with its corporate headquarters located at 100 East Patterson Street, Tecumseh, MI.

21. Defendant Todd Herrick is the former CEO and Chairman of the Board of Directors of Tecumseh Products Company who resides in Tecumseh, MI.

22. Defendant The Herrick Foundation is a Michigan nonprofit corporation. The Board of Trustees of the Herrick Foundation consists of Todd Herrick, Kent Herrick and Michael Indenbaum.

23. Defendant Kent Herrick is the son of Todd Herrick who, on information and belief, resides in Tecumseh, Michigan.

24. Defendant Toni Herrick is the sister of Todd Herrick who, on information and belief, resides in Tecumseh, Michigan.

25. Defendant Michael Indenbaum is a member of the Board of Trustees of the Herrick Foundation and, on information and belief, is a resident of Franklin, Michigan who has worked and conducted business on behalf of the Herrick Foundation in Lenawee County, Michigan.

## JURISDICTION AND VENUE

26. This action is brought to enjoin violations of, and obtain declaratory relief pursuant to, Section 13(d) of the Securities Exchange Act, 15 U.S.C. §§ 78m(d), the applicable rules and regulations of the Securities Exchange Commission promulgated thereunder, including but not limited to Rule 13d-1, 17 CFR 240.13d-1, and according to the corporate charter and bylaws of the Company.

5

27. This Court has exclusive jurisdiction over Plaintiffs' federal securities law claim pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and pursuant to 28 U.S.C. § 1331 and 1337.

28. This Court also has jurisdiction over Plaintiff's additional claim pursuant to 28 U.S.C. § 1367 because the additional claim arise from the same underlying facts, transaction and occurrence.

29. This Court has personal jurisdiction over Defendants, pursuant to MCL 600.701 and 600.705, because they are domiciled in Michigan and have conducted business in Michigan.

30. Venue of this action is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa. Defendants are inhabitants of and transact business in the Eastern District of Michigan, and defendants have used the means and instrumentalities of interstate commerce and the mails in their actions described herein.

31. There now exists an actual controversy between the parties as a threshold requirement under 28 U.S.C. §2201 because Defendants have asserted voting rights that they do not have.

## BACKGROUND

32. Tecumseh Products Company has two classes of common stock, Class A shares and Class B shares.

33. The two classes are identical in all respects except voting rights. The Class B shares have full voting rights, but the Class A shares have no voting rights except in very limited circumstances not present here.

34. There are 13,401,938 Class A shares and 5,077,746 Class B shares outstanding, making a total of 18,479,684. Thus, while the Class B shares have 100% of the voting power, they represent only 27.5% of the Company's total equity.

6

35. Both classes of shares are registered under Section 12(b) of the Securities Exchange Act of 1934 (the "1934 Act"), and both are listed on the Nasdaq Global Market.

## SECTION 13(D) OF THE 1934 ACT AND THE RELATED RULES

36. Under Section 13(d)(1) of the Securities Exchange Act, any "person" who acquires beneficial ownership of the equity securities of a company, with a class of securities registered under Section 12 of the Act, and who after the acquisition owns more than 5% of the outstanding shares of the class, must file a report with the SEC and mail a copy to the issuer within ten days after crossing the 5% threshold.

37. Regulation 13D/G implements this requirement by specifying the detailed requirements for filing these reports on Schedule 13D (or 13G in some cases).

38. In the Schedule 13D, the filing persons must fully and truthfully disclose (among other things) their identity and background (Item 2), the source and amount of funds used in purchasing shares of the subject company (Item 3), their purposes, plans and intentions with respect to the acquisition of such shares (Item 4), and any contracts, arrangements, understandings or relationships (legal or otherwise) among the filing persons and between such persons and any person with respect to any securities of the issuer, including but not limited to transfer or voting of any of the securities (Item 6).

39. Further, Item 4(e) of Schedule 13D specifically requires disclosure of any plans or proposals which relate to or would result in, inter alia: "Any change in the present board of directors or management of the issuer . . . ."

40. Rule 12b-20, 17 C.F.R. § 240.12b-20, specifically requires that filing persons must also disclose "such further material information" as is necessary to make the information

required in the Schedule 13D statement not misleading in light of the circumstances in which the required statements are made.

41. Rule 13d-1(i) specifies that, for purposes of these requirements, "equity securities" do not include "securities of a class of non-voting securities."

42. In the Company's case, the Schedule 13D/G filing requirements only apply to Class B shares.

43. Rule 13d-3 contains rules for determining beneficial ownership. In general, Rule 13d-3 provides that a person beneficially owns equity securities if he has or shares voting power or dispositive power over them.

44. Section 13(d)(3) of the Act provides: "When two or more persons act as a partnership, limited partnership, syndicate, *or other group* for the purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or *group* shall be deemed a "person" for the purposes of this subsection." *(Emphasis added.)*

45. Rule 13d-5(b)(1) provides: "When two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership, for purposes of Sections 13(d) and 13(g) of the Act, as of the date of such agreement, of all equity securities of that issuer beneficially owned by any such persons."

46. The information required to be disclosed in a Schedule 13D filing is required to be given with respect to each member of a "group."

47. Thus, under the statute and Rule 13d-5, when two or more people enter into an agreement "to act together for the purpose of acquiring, holding, voting or disposing of" voting securities—

8

- ➢ a "group" is formed,

- ➢ the group is considered to have acquired, on the date of the agreement, beneficial ownership of all the securities beneficially owned by its members,

- ➢ and if, after the acquisition resulting from formation of the group, the group owns more than 5% of the class, the group must file a report under Section 13(d)(1).

### THE CLASS A PROTECTION PROVISION

48. Section G of Article IV of Tecumseh's articles of incorporation, known as the "Class A Protection Provision," was designed to protect the value of the Class A shares by preventing the acquisition of control over a substantial percentage of Class B shares by a person who does not also own the same percentage of the outstanding Class A shares.

49. The "Class A Protection Provision" was added as part of the April 22, 1992 amendment to the articles of incorporation that created the Class A and Class B shares to replace the Company's former single class of common shares. A copy of the provision is attached as Exhibit 1.

50. Todd Herrick was CEO and President of the Company when the Class A Protection Provision was added.

51. The Class A Protection Provision is based on concepts and defined terms taken from Section 13(d) of the 1934 Securities Exchange Act and the rules adopted by the Securities Exchange Commission under that section.

52. The Class A Protection Provision defines the following four terms in subsection (i):

- ➢ "Covered Shares" means, with respect to a person or group, the Class B shares beneficially owned by that person or group other than shares acquired by that person or group in an Excluded Acquisition.

9

➢ "Covered Share Percentage" means the percentage obtained by dividing the Covered Shares of a person or group by the total number of Class B shares outstanding.

➢ "Excluded Acquisition" means (a) the acquisition of Class B shares that took place on the date (April 22, 1992) on which each outstanding share of the Company's former single class of common stock was converted into a Class B share and (b) any other acquisition of shares from the Company or from any person by operation of law (including but not limited to the laws of descent and distribution), by will, by gift, or by foreclosure of a security interest given to secure a bona fide loan.

➢ "Threshold Percentage" means 10% or any higher percentage evenly divisible by 5.

53. If a person or group (a "Significant Shareholder") acquires beneficial ownership of Class B shares and the acquisition causes the Significant Shareholder's Covered Share Percentage to exceed a Threshold Percentage that it did not exceed before the acquisition, and if the Significant Shareholder does not at that time beneficially own at least the same percentage of the outstanding Class A shares, then the Significant Shareholder must make a cash tender offer for enough Class A shares to make its percentage beneficial ownership of Class A shares (excluding any acquired in an Excluded Acquisition) at least equal to its Covered Share Percentage. (Subsections (ii) and (iii).)

54. The price the Significant Shareholder must pay in the tender offer is the higher of the then current market price or the highest price the Significant Shareholder paid for Class B shares during the past six months. (Subsection (iv).)

55. Until the Significant Shareholder makes and consummates the cash tender offer, the Significant Shareholder may not vote or direct the vote of any Covered Shares then or later beneficially owned by the Covered Shareholder. (Subsection (v).)

56. For purposes of the Class A Protection Provision, beneficial ownership is to be determined in accordance with SEC Rule 13d-3. (Subsection (ix.) As discussed above, that rule provides that a person is considered a beneficial owner if he has or shares the right to vote or to direct the voting of the shares, or if he has or shares the right to dispose of them or to direct their disposition.

57. Under the Class A Protection Provision, "group" means a group as described in SEC Rule 13d-5. (Subsection (ix.).)

58. Under the Class A Protection Provision, formation of a group has the effect described in subsection (b) of Rule 13d-5. When a group is formed, the group is considered to have acquired beneficial ownership of all Class B shares beneficially owned by each member of the group except shares beneficially owned by a group member and acquired by that group member in an Excluded Acquisition. (Subsection (ix.).)

## DEFENDANTS' SHARE OWNERSHIP

59. Todd W. Herrick personally owns 21,906 Class B shares (0.4% of the total outstanding). He acquired 15 of those shares in an Excluded Acquisition and the balance in other transactions. He owns no Class A shares.

60. Toni L. Herrick does not personally own any shares of either class.

61. Kent B. Herrick personally owns no Class B shares but does own 2,000 Class A shares.

11

62. Michael A. Indenbaum is the attorney for Todd Herrick, the Herrick family trusts described below, and Herrick Foundation. On information and belief, he does not personally own any shares of either class.

63. The Herrick Foundation owns 1,305,425 Class B shares (25.7% of the total outstanding), all of which it acquired in an Excluded Acquisition. It also owns 331,347 Class A shares (2.5% of the total outstanding).

64. The Herrick Foundation's affairs are managed by a board of directors consisting of three persons: Todd Herrick, Kent Herrick, and Michael Indenbaum. Corporate action to authorize voting or disposing of its shares requires the affirmative votes of two of the three directors.

65. Trusts established by Todd and Toni Herrick's grandfather (now deceased) for the benefit of their father (also deceased) and his children own 888,113 Class B shares (17.5% of the total outstanding). The trusts acquired 341,100 of those shares in an Excluded Acquisition and the balance in other transactions.

66. The Herrick family trusts also own 454,441 Class B shares (3.4% of the total outstanding).

67. The trustees of the Herrick family trusts are Todd Herrick, Toni Herrick, and Michael Indenbaum.

68. Until recently, Comerica Bank was also a trustee, but it resigned in December 2006.

69. Before October 2006, the trust documents provided that decisions to vote or dispose of Company shares owned by the trusts required approval by a majority of the non-beneficiary trustees (*i.e.*, approval by Michael Indenbaum and the bank trustee).

12

70. On or about October 25, 2006, the Lenawee County probate court issued an order modifying the trusts that reversed that arrangement by vesting all authority to vote or dispose of the shares in the beneficiary trustees (Todd and Toni Herrick) and removing all such authority from Michael Indenbaum and the bank trustee (hereinafter the "October 2006 court order").

## DEFENDANTS' ACTIONS TO EXERCISE OWNERSHIP AND VOTING RIGHTS OF SHARES

### A.   TODD HERRICK'S 2003 SECTION 13D FILING RELATED TO FOUNDATION SHARES

71. Todd Herrick became a trustee of Herrick Foundation in 1989, one of five trustees at that time.

72. Fourteen years later, on April 1, 2003, Todd Herrick filed a Schedule 13D reporting beneficial ownership (with shared voting and dispositive power) of the Foundation's shares. As the reasons for his determination that he should file at that time, he cited changes that had occurred since 1989, including particularly the resignation of his father from the position of Chairman of Tecumseh Products Company and Todd Herrick's appointment to that position, as the reasons for his determination that he should file at that time.

73. This filing is an acknowledgement by Mr. Herrick that at or near that point in time, he had consolidated his authority over the Foundation (the other two trustees were Michael Indenbaum and Todd Herrick's father, who was in poor health and had greatly reduced his level of involvement in the Foundation's activities) and was in control of any voting or dispositive decisions.

13

**B.    THE OCTOBER 2006 COURT ORDER RELATED TO TRUST SHARES**

74. The October 2006 court order gave Todd and Toni Herrick shared voting and dispositive power over the trusts' shares, which neither had before. Thus, they each acquired beneficial ownership of the trusts' shares.

**C.    THE NOVEMBER 1, 2006 OPTION AGREEMENTS WITH TRICAP**

75. On November 1, 2006, the Herrick Foundation entered into two option agreements under which it granted options to purchase Class A and Class B shares to Tricap Partners LLC.

76. On the same date, the Herrick trusts entered into an option agreement under which they granted Tricap options to purchase Class A shares.

77. All of these option grants were made as part of the consideration for Tricap's extending credit to the Company in a transaction arranged by Todd Herrick as CEO of the Company.

78. By approving these transactions in their various capacities on behalf of the trusts and the Herrick Foundation, Todd Herrick, Toni Herrick, Kent Herrick, and Michael Indenbaum acted together under an agreement to use their authority over the trusts and Herrick Foundation to cause them to dispose of some of the trusts' and the Foundation's shares by granting options in furtherance of the overall financing plan engineered by Todd Herrick.

**D.    FEBRUARY 2007 DIRECTOR NOMINATIONS AND FOUNDATION'S INDEMNITY**

79. On February 20, 2007, pursuant to the advance notice provision in the Company's bylaws, Todd Herrick notified the Company that he intended to nominate three candidates (himself and two others) for election to the board of directors at the 2007 annual meeting of shareholders.

14

80. The notice stated that the Herrick Foundation had agreed to indemnify each nominee (including Todd Herrick) for any losses incurred in connection with serving as a nominee.

81. On February 22, 2007, the Foundation (through Cede & Co., the record holder that serves as nominee for The Depositary Trust Company, a clearing agency through which the Foundation's and many other holders' shares are held) delivered a substantially identical notice to the Company stating that it, too, intended to nominate the same three candidates at the 2007 annual meeting and stating that it had agreed to indemnify each of them (again including Todd Herrick) for any losses incurred in connection with serving as a nominee.

82. The substantially identical character of the notices and the Herrick Foundation's agreement to indemnify Todd Herrick's nominees, including Todd Herrick himself, establish an agreement among Todd Herrick, Kent Herrick, and Michael Indenbaum to cause the Foundation to vote its Class B shares for the candidates favored by Todd Herrick and for whom he intends vote his own shares.

## E.   THE MARCH 2007 DIRECTOR NOMINATIONS AND FOUNDATION'S INDEMNITY

83. On March 6, 2007, Todd Herrick notified the Company that he intended to nominate a fourth candidate—his son, Kent Herrick—for election to the board of directors at the 2007 annual meeting of shareholders.

84. This notice also stated that the Herrick Foundation had agreed to indemnify the nominee, Kent Herrick in this case, for any losses incurred in connection with serving as a nominee.

85. Delivery of this notice further establishes the agreement that exists among Todd Herrick, Kent Herrick, and Michael Indenbaum to act together for the purpose of voting Todd

15

Herrick's shares and causing the Herrick Foundation to vote its shares for the candidates favored by Todd Herrick.

## F.    THE MARCH 2007 COMPLAINT FILED BY TODD HERRICK AND HERRICK FOUNDATION

86. The State Court Complaint and related documents jointly filed by Todd Herrick and the Herrick Foundation on March 6, 2007 overtly acknowledge, which neither had done before, that Todd Herrick and the Herrick Foundation (presumably with the authorization of its directors, Todd Herrick, Kent Herrick, and Michael Indenbaum) are working in concert to take control of the Company's Board of Directors. This further establishes their agreement to act together as a group for the purpose of voting Todd Herrick's and Herrick Foundation's shares.

### SECTION 13(D) REPORTING BY DEFENDANTS

87. As described above, Todd Herrick's April 1, 2003 Schedule 13D acknowledged that he had acquired beneficial ownership of the Foundation's Class B shares shortly before that date.

88. Todd Herrick and Toni Herrick's February 23, 2007 joint Schedule 13D amendment acknowledged that each of them acquired beneficial ownership of the Herrick family trusts' Class B shares on or about October 25, 2006, when the court order gave them the voting and dispositive power they had not had before.

89. Both Todd and Toni Herrick denied on their February 23, 2007 joint Schedule 13D amendment that they were part of a group.

90. Todd Herrick expressly stated on his February 23, 2007 joint Schedule 13D amendment that he had no current plans or proposals that relate to or would result in "any change in the present board of directors or management of Tecumseh" or "any other material change in Tecumseh's business or corporate structure."

16

91. Todd Herrick reported on his February 23, 2007 joint Schedule 13D amendment that he beneficially owned 2,215,444 shares representing 43.6% of those outstanding.

92. Kent Herrick has never filed a Schedule 13D.

93. None of the Defendants has ever acknowledged the existence of a Section 13(d) group in any Section 13(d) filing.

## COUNT I
## VIOLATION OF SECTION 13(d)

94. In order to minimize the effect of recent economic downturns upon its business and its shareholders, the Company has endeavored to implement business strategies designed to maximize its profitability and its shareholder value. Only by succeeding in the long term does the Company believe that it can truly maximize its profitability and its shareholder value.

95. Despite the Company's efforts to maximize shareholder value over the long term, and without regard for their obligations of full disclosure, defendants agreed and conspired amongst themselves to effect a scheme designed to accomplish a single objective — to restore Todd Herrick's control over the Company.

96. In furtherance of this scheme and as is evident from defendants' actions to exercise ownership and voting rights of Tecumseh shares, *see e.g.*, *supra* ¶¶ 70-85, defendants seek to cause the election of their representatives to the board of directors of Tecumseh, have acted to provide the Company and its management and directors with less than full disclosure of their activities, and have agreed to consolidate their voting power.

97. In particular, defendants, individually and as a group, have engaged in numerous nondisclosures and misrepresentations in connection with their Schedule 13D filings with the SEC including, inter alia, the failure to disclose certain agreements, group memberships, group

17

purposes, financial arrangements, and beneficial ownership of shares all in violation of Section 13(d).

98. On information and belief, the undisclosed agreements include but are not limited to agreements as to the voting of shares, control of shares, sharing of expenses, the payment of attorneys, agreements as to the exercise of control over litigation activities, agreements as to the exercise of control over filings with the SEC, and/or agreements as to the role and purposes of the group.

99. Defendants' failure to disclose their agreements, their consolidation of voting power, their formation of a group as the beneficial owner of their shares and their intent to take over the management and control of the Company is a violation of Section 13(d).

100. Defendants have also failed to accurately and properly file reports or amended reports that reflect that events and activities alleged above all in violation of Section 13(d).

WHEREFORE, the Court should declare defendants in violation of Section 13(d) and enjoin them from voting any of their shares until they comply with the requirements of the Section.

## COUNT II
## VIOLATION OF THE CLASS A PROTECTION PROVISION

### A.   TODD HERRICK'S ACQUISITION OF BENEFICIAL OWNERSHIP OF FOUNDATION SHARES IN 2003

101.    Todd Herrick's acquisition of beneficial ownership of the Herrick Foundation's Class B shares in 2003, as acknowledged in the Schedule 13D he filed at that time, was not an Excluded Acquisition under the Class A Protection Provision, and the shares were therefore Covered Shares for purposes of computing his Covered Share Percentage.

18

102.    This acquisition increased his Covered Shares from 10,923 to 1,378,448 (the Herrick Foundation owned 1,367,525 Class B shares at that time) and increased his Covered Share Percentage from 0.4% to 27.3%, crossing several Threshold Percentages.

103.    At that time, Todd Herrick beneficially owned far less than 27.3% of the Class A shares, and he has never made the tender offer required by the Class A Protection Provision.

104.    When Todd Herrick acquired beneficial ownership of the Herrick Foundation shares, he lost the right to vote his own shares (other than the 15 that were not Covered Shares) and to direct the vote of all the Foundation's shares.

**B.    TODD HERRICK'S ACQUISITION OF BENEFICIAL OWNERSHIP OF HERRICK FAMILY TRUSTS' SHARES**

105.    Todd Herrick's acquisition of beneficial ownership of the Herrick family trusts' shares on or about October 25, 2006, as acknowledged in the Schedule 13D amendment he filed jointly with Toni Herrick on February 23, 2007, was not an Excluded Acquisition under the Class A Protection Provision, and the shares were therefore Covered Shares for purposes of computing his Covered Share Percentage.

106.    This acquisition increased his Covered Shares from 1,327,316 to 2,215,429 (Herrick Foundation owned 1,305,425 Class B shares at that time) and increased his Covered Share Percentage from 26.1% to 43.6%, crossing several Threshold Percentages.

107.    At that time, Todd Herrick beneficially owned far less than 46.3% of the Class A shares, and he has never made the tender offer required by the Class A Protection Provision.

108.    Therefore, under the Class A Protection Provision, Todd Herrick may not vote or direct the vote of any of the following shares:

- his own shares (except for the 15 that are not Covered Shares);

- the Herrick family trusts' shares, of which he acquired beneficial ownership on or about October 25, 2006;

- or the Herrick Foundation's shares, which he already beneficially owned.

## C.    TONI HERRICK'S ACQUISITION OF BENEFICIAL OWNERSHIP OF HERRICK FAMILY TRUSTS' SHARES

109.    Toni Herrick's acquisition of beneficial ownership of the Herrick family trusts' shares on or about October 25, 2006, as acknowledged in the Schedule 13D amendment she filed jointly with Todd Herrick on February 23, 2007, was not an Excluded Acquisition under the Class A Protection Provision, and the shares were therefore Covered Shares for purposes of computing her Covered Share Percentage.

110.    This acquisition increased her Covered Shares from 0 to 888,113 and increased her Covered Share Percentage from 0.0% to 17.5%, crossing two Threshold Percentages.

111.    At that time, Toni Herrick beneficially owned far less than 17.5% of the Class A shares, and she has never made the tender offer required by the Class A Protection Provision.

112.    Therefore, under the Class A Protection Provision, she may not vote or direct the vote of the Herrick family trusts' shares.

## D.    FORMATION OF A GROUP CONSISTING OF TODD HERRICK, TONI HERRICK, KENT HERRICK, AND MICHAEL INDENBAUM

113.    As described above, on or before November 1, 2006, Todd Herrick, Toni Herrick, Kent Herrick, and Michael Indenbaum entered into an agreement to use their authority over the Herrick family trusts and the Herrick Foundation to cause them to dispose of some of the trusts' and the Foundation's shares by granting options to Tricap in furtherance of the overall financing plan engineered by Todd Herrick.

20

114.    Their later actions confirmed the existence of a group acting together for the purpose of voting Todd Herrick's, the Herrick Foundation's, and the Herrick family trusts shares together to nominate and elect a slate of directors selected by Todd Herrick in an attempt to take control of the Company.

115.    Under the Class A Protection Provision, formation of the group constituted the acquisition by the group of all the Class B shares beneficially owned by each of them (other than the 15 owned by Todd Herrick that were acquired by him in an Excluded Acquisition).

116.    The shares so acquired by the group consist of:

- all but 15 of the shares owned by group member Todd Herrick personally;

- all of the shares owned by the Herrick Foundation (which, before formation of the group, were beneficially owned by group member Todd Herrick and were not acquired by him in an Excluded Acquisition); and

- all of the shares owned by the Herrick family trusts (which, before formation of the group, were beneficially owned by group members Todd Herrick and Toni Herrick and were not acquired by either of them in an Excluded Acquisition),

herinafter referred to as the "Suspended Shares."

117.    Therefore, under the Class A Protection Provision, neither Todd Herrick, Toni Herrick, Kent Herrick, nor Michael Indenbaum may vote or direct the vote of any of the Suspended Shares.

WHEREFORE, the Court should enter its declaratory judgment and injunction suspending the power of Todd Herrick, Toni Herrick, Kent Herrick and Michael Indenbaum from voting or directing the vote of the Suspended Shares and any other shares otherwise

acquired in violation of the Class A Protection Provision and granting the Company and its

directors any additional relief deemed just and equitable by the Court.

                           MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
                           Carl H. von Ende (P21867)
                           Todd A. Holleman (P57699)

                           By: _____
                                  Todd A. Holleman
                           Attorneys for Tecumseh Products Company
                           150 West Jefferson, Suite 2500
                           Detroit, MI  48226
                           (313) 963-6420
                           holleman@millercanfield.com

Dated:  March 15, 2007

DELIB:2832483.1\088991-01121

22

## Appendix

## (Section G of Article IV of the
## Articles of Incorporation of Tecumseh Products Company)

G.    Class A Protection Provision

     (i)    For purposes of this Article IV, the following capitalized terms have the following meanings, respectively:

        (a)    "Covered Shares" means, with respect to any person or group, the shares of Class B Common Stock beneficially owned by such person or group other than shares of Class B Common Stock (if any) that have been acquired by such person or group in any Excluded Acquisition;

        (b)    "Covered Share Percentage" means the percentage obtained at any relevant time by dividing the Covered Shares of a person or group by the total number of shares of Class B Common Stock then issued and outstanding;

        (c)    "Excluded Acquisition" means the acquisition of shares of Common Stock at the Effective Time pursuant to the provisions of this Article IV and any other acquisition of shares of Common Stock from the Corporation (whether or not for consideration) or from any person by operation of law (including but not limited to the laws of descent and distribution), by will, by gift or by foreclosure of a security interest given to secure a bona fide loan;

        (d)    "Threshold Percentage" means 10% or any higher percentage evenly divisible by 5.

     (ii)    If any person or group acquires beneficial ownership of any shares of Class B Common Stock such that upon such acquisition the Covered Share Percentage of such person or group equals or exceeds any Threshold Percentage which it did not equal or exceed immediately prior to such acquisition and does not then beneficially own shares of Class A Common Stock (other than shares of Class A Common Stock (if any) acquired by such person or group in an Excluded

Acquisition) amounting to a percentage of the Class A
Common Stock then issued and outstanding equal to or
in excess of the Covered Share Percentage of such
person or group (a "Significant Shareholder"), such
Significant Shareholder must, within ninety days after
the date of such acquisition (the "Acquisition Date"),
make, and must thereafter consummate, a public cash
tender offer to acquire additional shares of Class A
Common Stock as hereafter provided in this
Subsection G of Article IV (a "Class A Protection
Transaction").

(iii) In each Class A Protection Transaction, the
Significant Shareholder must make a public tender
offer in compliance with all applicable laws and
regulations to acquire that number of shares of
Class A Common Stock determined by (a) multiplying
such Significant Shareholder's Covered Share
Percentage by the total number of shares of Class A
Common Stock issued and outstanding on the Acquisition
Date and (b) subtracting therefrom the total number of
shares of Class A Common Stock (other than any
acquired by the Significant Shareholder in an Excluded
Acquisition) beneficially owned by such Significant
Shareholder on the Acquisition Date. The Significant
Shareholder must acquire all of such shares which are
validly tendered and not withdrawn; provided, however,
that if the number of shares of Class A Common Stock
tendered to the Significant Shareholder exceeds the
number of shares required to be acquired pursuant to
the formula set forth in this clause (iii), the number
of shares of Class A Common Stock required to be
purchased from each tendering holder shall be pro rata
in proportion to the number of shares of Class A
Common Stock validly tendered and not withdrawn by all
tendering holders.

(iv) The offer price for any shares of Class A
Common Stock required to be purchased by a Significant
Shareholder pursuant hereto shall be at least equal to
the greater of (a) the highest price per share paid by
the Significant Shareholder (including, in the case of
a Significant Shareholder which is a group, any member
thereof) for any Covered Share in the six-month period
ending on the Acquisition Date or (b) the highest bid
price quoted for a share of Class B Common Stock (or,
if higher, for a share of Class A Common Stock) on the
NASDAQ National Market System (or such other exchange

or quotation system as is then the principal trading market for such shares) on the Acquisition Date. In the event that the Significant Shareholder has acquired Covered Shares in the six-month period ending on the Acquisition Date for consideration other than cash, the per share value of such consideration shall be as determined in good faith by the Board of Directors.

(v)    Unless and until a Significant Shareholder, either makes an offer required by this Subsection G of Article IV and purchases shares validly tendered and not withdrawn, if any (after proration, if applicable), or divests beneficial ownership of sufficient shares of Class B Common Stock to cause the total number of Covered Shares then beneficially owned by the Significant Shareholder to be no greater than the number of Covered Shares which such Significant Shareholder could have owned on the Acquisition Date without becoming required to engage in a Class A Protection Transaction, such Significant Shareholder shall not be entitled to vote or direct the vote of any Covered Shares then or thereafter beneficially owned by such Significant Shareholder.

(vi)   In the event that a proposal is submitted for vote of the shareholders of the Corporation during the ninety-day period during which a Significant Shareholder is required to initiate a Class A Protection Transaction and such Significant Shareholder has not, prior to the record date for determining shareholders entitled to vote on such proposal, completed such Class A Protection Transaction, such Significant Shareholder shall not be entitled to vote or direct the vote of any Covered Shares of Class B Common Stock beneficially owned by such Significant Shareholder, with respect to such proposal.

(vii) Discharge by a Significant Shareholder of such Significant Shareholder's obligation to engage in a Class A Protection Transaction arising as a result of any acquisition by such Significant Shareholder shall not relieve such Significant Shareholder from any obligation to engage in a Class A Protection Transaction arising as a result of any other acquisition by such Significant Shareholder. An increase in any Covered Share Percentage resulting

solely from a decrease in the total number of shares
of Class B Common Stock issued and outstanding shall
not constitute an "acquisition" for any purpose under
this Subsection G of this Article IV.

(viii)      All calculations with respect to
percentage of ownership of issued and outstanding
shares of either class of Common Stock shall be based
upon the numbers of issued and outstanding shares
reported by the Corporation in the last filed with the
Securities and Exchange Commission of the
Corporation's most recent annual, quarterly, current
or Form 10-C report or definitive proxy statement
filed pursuant to the Securities Exchange Act of 1934,
as amended (the "1934 Act"), in which outstanding
shares of such class are reported.

(ix)  For purposes of this Subsection G of this
Article IV, the term "person" shall mean a person as
defined in Section 3(a)(9) of the 1934 Act,
"beneficial ownership" shall be determined in
accordance with Rule 13d-3 promulgated under the
1934 Act or any successor regulation, the term "group"
shall mean a group as described in Rule 13d-5
promulgated under the 1934 Act or any successor
regulation, and the formation of a group hereunder
shall have the effect described in paragraph (b) of
said Rule 13d-5 or any successor regulation. Anything
hereinabove to the contrary notwithstanding, however:
(a) relationships by blood or marriage between or
among two or more persons shall not be deemed to
constitute any of such persons a member of a group
with any other such persons; (b) action taken or
agreed to be taken by any person acting in his
official capacity as an officer or director of the
Corporation shall not be deemed to constitute such
person a member of a group with any other person, and
(c) formation of a group shall not constitute an
acquisition by the group (or any member thereof) of
beneficial ownership of any shares of Class B Common
Stock beneficially owned by any member of such group
and acquired by such group member in an Excluded
Acquisition.

## CIVIL COVER SHEET

JS 44 (11/04)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
TECUMSEH PRODUCTS COMPANY

**DEFENDANTS**
TODD HERRICK, KENT HERRICK, TONI HERRICK, MICHAEL INDENBAUM, and THE HERRICK FOUNDATION

**(b)** County of Residence of First Listed Plaintiff    Lenawee
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Lenawee
(IN U.S. PLAINTIFF CASES ONLY)

THE

Case: 2:07-cv-11144
Assigned To: Steeh, George Caram
Referral Judge: Majzoub, Mona K
Filed: 03-15-2007 At 04:52 PM
CMP TECUMSEH CO V. HERRICK ET AL (DA)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
MILLER, CANFIELD, PADDOCK and STONE, PLC
Carl H. von Ende (P21867), Todd A. Holleman (P57699)
150 W. Jefferson, Ste. 2500, Detroit, MI 48226 (313) 496-7668

### II. BASIS OF JURISDICTION (Select One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business In This State | ☑ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Select One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

*PERSONAL INJURY*
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
  *Habeas Corpus:*
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☑ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Access to Justice
- ☐ 950 Constitutionality of State Statutes

### V. ORIGIN (Select One Box Only)
- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC 78
Brief description of cause:
Securities Law Reporting Violation

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $
Declaratory Relief

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☑ No

### VIII. RELATED CASE(S) IF ANY
(See instructions)   JUDGE   Timothy P. Pickard   DOCKET NUMBER   07-2525-CZ

DATE
March 15, 2007

SIGNATURE OF ATTORNEY OF RECORD
*Todd [signature]*

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

PURSUANT TO LOCAL RULE 83.11

1.     Is this a case that has been previously dismissed?          ☐ Yes
                                                                    ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.     Other than stated above, are there any pending or previously     ☑ Yes
       discontinued or dismissed companion cases in this or any other    ☐ No
       court, including state court? (Companion cases are matters in which
       it appears substantially similar evidence will be offered or the same
       or related parties are present and the cases arise out of the same
       transaction or occurrence.)

If yes, give the following information:

Court:  Lenawee County Circuit Court _____

Case No.:  07-2525-CZ _____

Judge:  Timothy P. Pickard _____


Notes :